**UNITED STATES of America, Appellee,**

v.

**Richard ROMANO, a/k/a "Richard Dione," a/k/a "Eddie," Defendant-Appellant,**

**Angelo Amen, Mark A. Deleonardis, Patricia Torn, Richard Romano, Michael Paradiso, Edward Margiotta, Oreste Abbamonte, Jr., Defendants.**

**No. 1121, Docket 87–1038.**

United States Court of Appeals, Second Circuit.

Argued June 16, 1987.

Decided Aug. 7, 1987.

Victoria Morgan, Brooklyn, N.Y. (Farber & Miller, Brooklyn, N.Y., of counsel), for defendant-appellant.

Annmarie Levins, Asst. U.S. Atty., S.D. N.Y., New York City (Rudolph W. Giuliani, U.S. Atty., Steven A. Standiford and Kenneth Roth, Asst. U.S. Attys., S.D.N.Y., New York City, of counsel), for appellee.

Before OAKES, MESKILL and PRATT, Circuit Judges.

MESKILL, Circuit Judge:

This is an appeal from a judgment of conviction entered in the United States District Court for the Southern District of New York, Carter, J., following a guilty plea by Richard Romano to one count of conspiracy to distribute and possess with intent to distribute heroin in violation of 21 U.S.C. §§ 812 and 841 (1982). Judge Carter denied defendant Romano's request for a hearing to contest portions of the pre-sentence report and sentenced Romano to the maximum term of twenty years imprisonment. The district court based its sentencing decision on evidence developed in a related trial, over which Judge Carter presided, *United States v. Vasta*, 649 F.Supp. 974 (S.D.N.Y.1986), which showed Romano's involvement with Oreste Abbamonte, Jr. and Michael Paradiso in a heroin distribution ring operating from the Lewisburg penitentiary in Lewisburg, Pennsylvania (Lewisburg). Romano now claims that the district court violated due process by denying his request for a hearing to challenge the report and by imposing the maximum term of imprisonment following his guilty plea. We disagree and affirm the judgment of the district court.

## BACKGROUND

The trial of Abbamonte and Paradiso (the conspiracy trial) developed the following

facts. In the summer of 1984, the Drug Enforcement Agency (DEA) began an undercover operation which culminated in the prosecution of several individuals, including defendant Romano, for narcotics violations. The DEA investigation revealed an extensive drug distribution ring operating from Lewisburg. Two participants in the heroin distribution network, Abbamonte and Paradiso, inmates at Lewisburg, controlled the entire operation by using coded language to communicate with operatives outside of the prison. DEA undercover agents, posing as drug purchasers, managed to infiltrate the ring and expose its principals and several of its "foot soldiers."

On August 26, 1986, the government filed an indictment charging fourteen defendants with various counts of conspiracy to distribute, possession and distribution of narcotics. Romano was named in Count One, charging a conspiracy to distribute controlled substances in violation of 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(A) and 841(b)(1)(B) (1982) (prior to amendment on Oct. 12, 1984, by Pub.L. No. 98–473, Title II, Section 502), 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(A) and 841(b)(1)(B) (1982 & Supp. III 1985) (subsequent to such amendment), and Count Ten, charging possession with intent to distribute and distribution of controlled substances in violation of 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(A) and 18 U.S.C. § 2 (1982). Romano pleaded guilty to Count One. Count Ten was dismissed for lack of jurisdiction.

Prior to Romano's sentencing, the government submitted a pre-sentence report which detailed Romano's involvement in the heroin distribution conspiracy. The pre-sentence report was based in part on evidence adduced at the conspiracy trial before Judge Carter.

The evidence in the conspiracy trial, in which Romano did not participate as a result of his guilty plea, established that Romano was a close criminal associate of Paradiso. Romano, in fact, had been characterized as the "eyes and ears" of Paradiso, carrying out various orders and reporting to Paradiso at Lewisburg. Testimony further established that, at Paradiso's request, Romano began associating with Mark Deleonardis, who was a "lieutenant" in the Abbamonte organization. Romano became deeply involved in Abbamonte's distribution activities, conducting heroin transactions and running other criminal "errands" for both Paradiso and Abbamonte. In one instance, as detailed in the pre-sentence report, Romano was assigned to administer a "beating" to one of Abbamonte's recalcitrant employees, Angelo Amen. The assault never took place, however, because Amen, who had been warned of the plot, avoided returning to his apartment where Romano had been waiting. The government also alleged during trial that Romano played a leading role in the sale of 450 grams of heroin to an undercover agent in mid-August 1985.

In addition to Romano's involvement in the substantive charges of the heroin indictment, the government alleged that Romano had been engaged in other criminal activity. Specifically, the government alleged that Romano had been involved in the hijacking of ten trucks in 1978. According to the pre-sentence report, the hijackings were planned at the Villa Egea, a social club in the Bensonhurst section of Brooklyn, where agents had observed Romano reporting on a daily basis for meetings with Paradiso. Previously, in 1976, Romano pleaded guilty to robbery in the third degree for the hijacking of a pork products truck and was sentenced to five years probation.

The pre-sentence report also contained allegations that Romano was involved in Paradiso's extortion business in 1980 and 1981. According to the report, Romano had been present during the planning of an extortion scheme targeted at an eighty year old businessman. The conspirators apparently contemplated the use of a propane torch to secure acceptance of their extortionate demands. In 1981, Paradiso was convicted for his extortion activities but Romano was never prosecuted.

At sentencing, Romano's attorney indicated that portions of the pre-sentence report were disputed and that Romano denied

several of the allegations. Specifically, Romano denied the beating attempt involving Angelo Amen, denied all participation in hijacking activities and denied the extortion and planned attack on the elderly businessman. Counsel for Romano requested a hearing at which evidence could be presented to refute the government's allegations. Judge Carter summarily denied Romano's request, stating "[a]gain, the matter that I'm considering with Mr. Romano is what I have learned at this trial in regard to his participation in this crime." App. at 92–93. The court then sentenced Romano to the maximum term of twenty years imprisonment. This appeal followed.

## DISCUSSION

### A. *Denial of Hearing Request*

Romano's principal claim is that Judge Carter erred in denying him an opportunity to contest the evidence of his involvement in the heroin conspiracy. This evidence was presented at the conspiracy trial itself and was contained in the pre-sentence report. According to Romano, the evidence was inherently unreliable because he was not present at the earlier trial and thus did not have an opportunity to cross-examine witnesses or otherwise participate in the trial. Romano, therefore, claims that the sentencing procedures utilized by Judge Carter in this case violated procedural due process. We disagree.

As a general rule, a district judge has discretion to consider a wide range of information concerning a defendant's background in arriving at an appropriate sentence. *See United States v. Tucker*, 404 U.S. 443, 446, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972); *United States v. Lee*, 818 F.2d 1052, 1055 (2d Cir.1987); *United States v. Pugliese*, 805 F.2d 1117, 1122 (2d Cir.1986). Thus, a district judge may consider hearsay statements, evidence of uncharged crimes, dropped counts of an indictment and criminal activity resulting in an acquittal in determining sentence. *See Pugliese*, 805 F.2d at 1122 (citing cases). Evidence of Romano's participation in the conspiracy ring was directly relevant to Judge Carter's sentencing determination. Considera-

tion of such evidence "does not in and of itself offend a defendant's due process rights." *Lee*, 818 F.2d at 1055.

However, a defendant does have "a due process right to question the procedure leading to the imposition of his sentence." *United States v. Pugliese*, 805 F.2d at 1122 (citing *Gardner v. Florida*, 430 U.S. 349, 358, 97 S.Ct. 1197, 1204, 51 L.Ed.2d 393 (1977)). Due process requires that a defendant be given an opportunity to assure the accurate presentation of reliable sentencing information to the district court. A defendant, therefore, may not be sentenced on the basis of "materially untrue" statements or "misinformation." *Townsend v. Burke*, 334 U.S. 736, 741, 68 S.Ct. 1252, 1255, 92 L.Ed. 1690 (1948). Congress, for example, has provided in Fed.R. Crim.P. 32(c)(3)(A) that a defendant and his counsel must be given an opportunity to review a pre-sentence report and provide comment to ensure that the "report [is] completely accurate in every material respect." H.R.Rep. No. 247, 94th Cong., 1st Sess. 18, *reprinted in* 1975 U.S.Code Cong. & Admin.News 674, 690. Thus, to the extent that Judge Carter relied on information presented at the trial of Abbamonte and Paradiso and other information contained in the pre-sentence report, Romano was entitled to contest the accuracy of that information under the Due Process Clause.

The question of what process is due in sentencing is separate and distinct from the question of whether due process is required. *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). Due process does not require the observance of rigid procedures in every case where a defendant seeks to challenge pre-sentence information. *See Pugliese*, 805 F.2d at 1123. It is well established, for instance, that a defendant has no right to a full-blown evidentiary hearing at sentencing, *see id.; United States v. Needles*, 472 F.2d 652, 657–58 (2d Cir.1973), even though when a defendant challenges the veracity of hearsay evidence in a presentence report the government is required to introduce corroborating proof to insure the reliability

of the evidence. *See Pugliese,* 805 F.2d at 1123 (citing and quoting *United States v. Fatico,* 579 F.2d 707 (2d Cir.1978) (*Fatico I*)). A district judge, *in his discretion,* may direct that a trial-type evidentiary hearing take place. Short of this, however, a defendant may challenge pre-sentence information by offering written submissions, directing argument to the court or cross-examining witnesses. *United States v. Lee,* 818 F.2d at 1056. Which of these procedures is the most appropriate in a particular case can be determined by applying the balancing test set forth in *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Four factors should be considered: (1) the nature of the individual interest, (2) the risk of error associated with the present procedures, (3) the value of additional procedural safeguards, and (4) the government's interest in avoiding undue fiscal or administrative burdens. *Id.* at 335, 96 S.Ct. at 903.

■ Applying the first factor to this case, it is clear that Romano's interest in sentencing could not be stronger because his future liberty will be determined by the sentence imposed. *See, e.g., Lee,* 818 F.2d at 1055–56; *Pugliese,* 805 F.2d at 1122. Against this interest, however, we must balance the government's competing interest in avoiding undue fiscal burdens, the risk of error inherent in present procedures and the incremental value of additional safeguards. These remaining factors cut heavily against Romano's claimed right to a hearing.

The risk of error in the proceedings below was minimal. Judge Carter relied on pre-sentence information developed in the context of an adversarial proceeding subject to the rules of evidence. Such evidence is at least as reliable as other "kind[s]" and "source[s]" of information, the reliance on which we have consistently upheld. *See generally Pugliese,* 805 F.2d at 1122–23. Moreover, the bulk of the government's evidence was presented at trial in the form of tape recorded telephone conversations between Romano and his co-conspirators. Because these recordings

were fully authenticated, the risk of error associated with their use was *de minimis.*

Romano did challenge the accuracy of three specific items in the pre-sentence report. These items related to Romano's attempted assault on Angelo Amen and the hijacking and extortion activities carried on by Romano and Paradiso. First, for the reasons discussed in Part B, *infra,* it is evident from the transcript that Judge Carter did not rely on this evidence in sentencing Romano. Second, as mentioned above, the government's evidence against Romano produced at the conspiracy trial was based primarily on authenticated wiretap recordings. Third, the hijacking and extortion evidence was first presented by DEA agent George Hanna at Romano's bail hearing. At that time, Romano cross-examined Agent Hanna and explored inaccuracies in his testimony. Even if Judge Carter relied on this evidence, therefore, little risk of error was presented by its consideration.

The third factor in the *Mathews* balancing test, the incremental value of additional procedural safeguards, similarly cuts against Romano's claimed right to a hearing. Aside from Agent Hanna's testimony concerning the hijacking and extortion incidents, the bulk of the government's case was based on recorded telephone conversations emanating from Lewisburg. Cross-examination of Agent Hanna would have been repetitive. Cross-examination of the tapes would have been impossible. *See, e.g., Kentucky v. Stincer,* —— U.S. ——, ——, 107 S.Ct. 2658, 2667, 96 L.Ed.2d 631 (1987) (defendant's claimed right to attend competency hearing rejected where defendant's attendance at hearing would serve no purpose).

Finally, the administrative and fiscal burdens of the hearing request are obvious. Multiple and duplicative "trials" would result if a defendant were permitted in every case to challenge information that was properly authenticated and tested in a prior proceeding. Despite the strength of Romano's liberty interest, we think it is clear that the government's resources should not be more heavily taxed where, as here, the advantages to be gained from the proce-

dures are far outweighed by the fiscal and administrative burdens faced by the government in implementing them.

Although Romano was not entitled to an evidentiary hearing in this case, some process was due by which he could challenge the accuracy of pre-sentence information presented to the district court. *Fatico I,* 579 F.2d at 711–14. Judge Carter provided Romano with an appropriate opportunity. At the sentencing hearing, Romano was permitted to direct argument to the court concerning the alleged inaccuracies in the pre-sentence information. App. at 88–93. Judge Carter considered these arguments and rejected them. Moreover, the government provided Romano with the transcripts and tape recordings of the prison telephone conversations prior to the conspiracy trial. The pre-sentence report also contained the evidence established against Romano at that trial. Prior to sentencing, therefore, Romano was on notice of all relevant information that could be used in determining his sentence and had an opportunity to make appropriate objections. No more is required by the Due Process Clause or by Rule 32. Judge Carter, therefore, committed no error in denying Romano's request for a hearing.

### B. *Failure to Consider Pre-Sentence Report*

Romano also claims that Judge Carter failed adequately to consider the pre-sentence report in violation of Fed.R.Crim.P. 32(c). The report, according to Romano, contained favorable material which should not have been discredited. A fair reading of the transcript, however, reveals that Judge Carter merely disclaimed reliance on the disputed portions of the report rather than the report in its entirety, even though Romano's counsel at sentencing termed the report "totally inaccurate" and its reliability "highly questionable." *See* App. at 88.

Prior to Romano's comments at the sentencing hearing, Judge Carter entertained comments from Paradiso regarding his own pre-sentence report. Paradiso complained that various portions of the report were inaccurate. To this Judge Carter replied, "[w]ell, I'll be fair enough to say that I'm not going to consider any of the specifics that you've mentioned." App. at 82. He went on to state: "I read all the material—but generally, my intent is to consider only the information that relates to the specific matter before me." *Id.* at 83. Judge Carter's statements leave no doubt that he disclaimed reliance on only the disputed portions of Paradiso's report, while considering all other material that was relevant to the crime for which Paradiso stood convicted.

Following Paradiso's objections, counsel for Romano made similar objections to his pre-sentence report. Judge Carter likewise replied "[a]gain, the matter that I'm considering with Mr. Romano is what I have learned at this trial in regard to his participation in this crime." App. at 92–93. When read in context with Judge Carter's prior statements concerning Paradiso's attempt to itemize disputed portions of his report, it seems clear that Judge Carter responded in like fashion to Romano's comments, *i.e.,* that he would not consider disputed portions but would consider all undisputed, relevant information. The record, therefore, does not support Romano's claim that his pre-sentence report was entirely discredited by Judge Carter.

■ Rule 32(c)(3)(D)(ii) provides that a district judge may disclaim reliance on disputed portions of a pre-sentence report. When a district judge determines that the disputed matter will not be taken into account at sentencing, no factual findings concerning the alleged inaccuracies are required. Fed.R.Crim.P. 32(c)(3)(D)(ii); *United States v. Bradley,* 812 F.2d 774, 782 (2d Cir.1987); *United States v. Ursillo,* 786 F.2d 66, 68–69 (2d Cir.1986); *United States v. Navaro,* 774 F.2d 565, 566 (2d Cir.1985) (per curiam); *United States v. Charmer Industries, Inc.,* 711 F.2d 1164, 1172 (2d Cir.1983). In *Navaro,* we held that a district judge fully complied with Rule 32 by stating that he " 'did not consider [the] alleged inaccuracies' " in determining sentence. 774 F.2d at 566 (quoting district court). Similarly, we deem Judge Carter's statement that he would consider only evi-

dence of Romano's participation in the conspiracy sufficient to satisfy Rule 32. Contrary to Romano's claim, this is not a case where the district court simply ignored the pre-sentence report. Therefore, no findings regarding the disputed portions of the pre-sentence report were required and no error was committed by the district court.

### C. *Maximum Sentence*

Following Romano's guilty plea, Judge Carter imposed the maximum sentence of twenty years imprisonment for Romano's participation in the conspiracy. While we are mindful that, as to the imposition of sentence, "substantial deference ... must be accorded legislatures and sentencing courts," *Solem v. Helm,* 463 U.S. 277, 290 n. 16, 103 S.Ct. 3001, 3009 n. 16, 77 L.Ed.2d 637 (1983), we nevertheless must express our concern that the meting out of maximum sentences following guilty pleas might seriously impair the effectiveness of the plea bargaining process. A defendant who perceives nothing to gain by a plea of guilty will rarely enter such a plea. The practice followed by the court here, while constitutionally valid, if followed regularly would likely result in many more trials where the evidence of guilt is overwhelming. Defendants would have everything to gain and nothing to lose by proceeding to trial even where conviction is a virtual certainty.

Although the maximum sentence gives us pause as a policy matter, it does not justify a remand for resentencing. In *United States v. Gaggi,* 811 F.2d 47, 63 (2d Cir.1987), we stated that "there is no constitutional basis for reversing the sentence imposed inasmuch as it falls within statutory limits and is not grossly disproportionate to the seriousness of the offense." Here, we are persuaded that Romano's sentence was not disproportionate to the crime charged. Romano participated in an extensive heroin distribution network which operated from a federal penitentiary. He provided key assistance to individuals who had already been convicted and were serving sentences for narcotics offenses. No doubt Judge Carter viewed this circumstance as an aggravating factor. As to the distribution of heroin in general, Judge Carter remarked "[t]he poison that was involved in this case, that is one of the most destructive ... known, and all of you were involved in poisoning the community with respect to destroying people's lives and neighborhoods and the rest." App. at 118. Judge Carter properly viewed Romano's crime as a serious offense and exercised his discretion by ordering the maximum sentence. We cannot say, therefore, that Romano's sentence constitutes cruel and unusual punishment under the Eighth Amendment or is violative of the Due Process Clause of the Fifth Amendment.

### CONCLUSION

For the foregoing reasons, the judgment of the district court is affirmed.