**UNITED STATES, Plaintiff,**

v.

**Alan FRANK, Defendant.**

**Crim. A. No. 87–226.**

United States District Court,
W.D. Pennsylvania.

March 30, 1988.

Jeffrey A. Manning, Asst. U.S. Atty., Pittsburgh, Pa., for U.S.

Alan Frank, pro se.

W. Penn Hackney, Pittsburgh, Pa., for Alan Frank.

## OPINION

ZIEGLER, District Judge.

### I. *History of Case*

Pending before the court are the constitutional challenges of defendant, Alan Frank, to the Sentencing Reform Act of 1984, 28 U.S.C. §§ 991–98 (1987), and the guidelines promulgated by the United States Sentencing Commission. We agree with defendant that the sentencing guidelines mandate a procedure that violates the Due Process Clause of the Fifth Amend-

ment because it unduly limits a defendant's right to present relevant evidence to a district court that will weigh the facts in determining an appropriate judgment of sentence, and that the Act violates the separation of powers doctrine because Congress mandated that Article III judges serve on an executive commission, and perform executive duties and functions. We have given serious consideration to the remaining contentions of defendant and find them to be without merit.

Alan Frank was found guilty by a jury of Flight to Avoid Prosecution in violation of 18 U.S.C. § 1073. The jury found that Frank fled the jurisdiction to avoid state court charges of forgery and theft that were about to be filed in the Criminal Division of the Court of Common Pleas of Allegheny County, Pennsylvania.

After the verdict, the United States filed a position paper with respect to sentencing contending that, with appropriate adjustments, the total offense level is 17 mandating a minimum period of incarceration of 24 months and a maximum period of 30 months. The Probation office has concluded that the total offense level is 12 thereby establishing a guideline range of 10 months of confinement to a maximum period of 16 months. Defendant contends that, if he receives the process that is due, the sentence will be probation or, at worst, a minimum period of incarceration.

The sentencing is scheduled for April 1, 1988 and Frank seeks to introduce facts that he contends are relevant to our jurisprudential function but which were given inadequate consideration by the Sentencing Commission. He further contends that the guidelines arbitrarily limit the authority of a district court to weigh the facts and determine a fair and just sentence. In light of the foregoing, there can be no dispute that Alan Frank has standing and that the issues are ripe for adjudication.

### II. *The Due Process Violation*

■ Defendant challenges the constitutionality of the sentencing procedures under which the judgment of sentence will be imposed. Initially, defendant contends that the United States Sentencing Commission's

use of a "charge offense sentencing" scheme, rather than a "real offense sentencing" scheme violates due process.[1] Defendant argues that the use of a pending charge for any purpose in calculating the appropriate sentence violates due process. However, as the United States points out, mere consideration of such conduct at the time of sentencing does not violate a defendant's right to due process. *See United States v. Baylin,* 696 F.2d 1030 (3d Cir. 1982). Defendant's initial argument is without merit.

Defendant's next argument presents a more difficult question. Frank contends that the application of a mechanical sentencing procedure violates his right to due process. Defendant protests the severe restriction mandated by the guidelines on a district court's ability to assess the circumstances of the case in determining an appropriate sentence.

We will first examine whether the guidelines restrict a district court's ability to assess a defendant's circumstances in determining an appropriate sentence. The sentencing guidelines arrive at a sentencing range by considering the following categories: (1) the offense conduct; (2) the defendant's role in the offense; (3) whether the defendant obstructed the proceeding in any way; (4) whether the defendant accepted responsibility; and (5) the criminal history. Each category assigns a specific numerical value (termed "offense level") when certain factual circumstances are present, particular to the offense. This offense level is the Commission's determination of the significance that certain facts should play in arriving at an appropriate sentence. To apply the guidelines, the probation office reviews the facts, determines the applicable categories, and adds the offense level to determine the appropriate range of sentence. *See* Sentencing Guidelines, Part B. If any facts are disputed, the district court must resolve the dispute and then adjust the total offense level, if

necessary. *See* Sentencing Guidelines, § 6A1.3, Commentary. A district court does not have discretion to adjust the total offense level, established by the guidelines, once the specific factual findings are made. *See* 18 U.S.C. § 3553(b). Thus, once the fact finding is complete, the guidelines establish the sentencing range, not the judge.

A district court is permitted to sentence without the guidelines only if the court finds "there exists an aggravating or mitigating circumstance of a kind, or to a degree that was not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." 18 U.S.C. § 3553(b), as amended, Pub.L. No. 100–182, § 3 (December 7, 1987). Further, "where the applicable guidelines, specific offense characteristics, and adjustments do take into consideration a factor listed ... departure from the guidelines is warranted only if the factor is present to a degree substantially in excess of that which is ordinarily involved in the offense conviction." Sentencing Guidelines, § 5K2.0. The guidelines also provide that, other than specifically provided in the guidelines, age, education, vocational skills, mental and emotional conditions, physical condition, previous employment record or family and community ties are not ordinarily relevant in determining whether a sentence should be outside the guidelines. *See* Sentencing Guidelines, §§ 5H1.1–1.6. In sum, we agree with defendant and hold that the sentencing guidelines severely restrict a district court's ability to individualize a defendant's sentence. We must now determine whether this restriction violates due process.

The Due Process Clause provides that "No person shall be ... deprived of life, liberty, or property, without due process of law." The Court of Appeals has noted: "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful man-

---

**1.** The Sentencing Commission defined "real offense sentencing" as a sentence based upon the actual conduct in which the defendant was engaged regardless of the charges for which he was indicted or convicted, and "charge offense sentencing" as a sentence based upon conduct that constitutes the elements of the offense with which the defendant was charged and convicted.

ner but the concept is flexible, calling for procedural protection as dictated by the particular circumstance." *Kahn v. United States,* 753 F.2d 1208 (3d Cir.1985). The Due Process Clause has been applied to sentencing procedures, but this process does not "implicate the entire panoply of criminal trial rights." *Gardner v. Florida,* 430 U.S. 349, 358 n. 9, 97 S.Ct. 1197, 1205 n. 9, 51 L.Ed.2d 393 (1977); *United States v. Delker,* 757 F.2d 1390 (3d Cir.1985). As the Supreme Court has stated: "The defendant has a legitimate interest in the character of the procedure which leads to the imposition of sentence." *Gardner,* 430 U.S. at 358, 97 S.Ct. at 1205. However, a party advancing a due process challenge can assert only that the procedure violates due process as applied to him. *United States v. Palma,* 760 F.2d 475, 477 (3d Cir.1985). Thus, Frank, can assert only that the sentencing guideline procedure, utilized to select the sentencing range, violates his due process rights. The crux of defendant's challenge is that the sentencing guidelines procedure prevents the district court from according the proper weight at sentencing to the pending state court charges and from consideration of his family situation and other mitigating circumstances.

■ Since a district court's ability to assess the weight of facts at the time of sentencing is deeply etched in our jurisprudence, *United States v. Barker,* 771 F.2d 1362, 1365 (9th Cir.1985), the issue takes on added significance.[2] Previously, due process challenges have been directed to the evidence that a court may consider at sentencing, and the Due Process Clause does not limit what a court may consider. *See Williams v. New York,* 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949). However, due process does require that a defendant be afforded the opportunity to assure that accurate and reliable information is presented to a district court, *United States v. Romano,* 825 F.2d 725, 728 (2d Cir.1987), and that judgment is imposed on the basis of materially true statements and accurate information. *Townsend v. Burke,* 334 U.S. 736, 68 S.Ct. 1252, 2 L.Ed. 1690 (1948).

■ Applying these precepts, we must first determine whether Alan Frank has a due process right of opportunity to assure that the sentence imposed by this court is based upon circumstances unique to him. If he has such a right, we must determine what process is due to protect that right and whether the sentencing guidelines meet the test. *See Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).

To determine whether Frank has a right of due process, we must analyze the sentencing process. Sentencing is composed of two core determinations: first, a determination of the facts and circumstances of the case with reliability; second, a determination of the relevance of the established facts and circumstances that give rise to an appropriate sentence for this defendant. Under the prior sentencing system, a defendant's due process concerns related to the ability to challenge evidence, presented to a court, in an effort to aid the court in evaluating the facts and circumstances. In response, courts have recognized that a sentencing procedure at which a defendant is sentenced without the opportunity to rebut the information relied upon by the judge violates due process. *See Romano, supra; Collins v. Buchkoe,* 493 F.2d 343 (6th Cir.1974). In recognizing that due process provides a defendant with the opportunity to contradict evidence presented against him or her, courts have protected a defendant's ability to affect the court's assessment of that evidence in determining an appropriate sentence. Under the sentencing guidelines, however, a defendant has no opportunity to affect the court's assessment of the appropriate sentence based upon the facts and circumstances. The guidelines remove that opportunity. In our judgment, due process protects a defendant's opportunity to affect a court's

---

**2.** Courts have dealt with analogous situations where the district court, on its own, applied mechanical sentencing procedures. Appellate courts have uniformly held that such a procedure was an abuse of the district court's discretion. *See, e.g. United States v. Barker,* 771 F.2d 1362 (9th Cir.1985).

assessment of a proper sentence. As rehearsed, sentencing is more than a determination of the existence of facts, it also involves the weighing of facts as a whole to determine the appropriate sentence for a defendant. The weighing process, at sentencing, is the essence of the jurisprudential function for it affects a defendant's liberty interest as much as, if not more than, the court's determination of the existence of certain facts. If due process protects a defendant's ability to challenge facts presented to a district court at sentencing, it must also protect the ability to challenge the weight accorded to those facts. Without such protection, the risk of an improper sentence is just as great as when a defendant is without the opportunity to rebut facts presented to a district court. We conclude that due process requires that a defendant be afforded the opportunity to participate in that weighing process.

Next we must determine what process is due and whether the sentencing guidelines meet that test. Due process is a flexible concept that calls for such procedural protection as the particular situation demands. *Gardner v. Florida*, 430 U.S. at 358 n. 10, 97 S.Ct. at 1205 n. 10. What process is due in a particular case is determined by the balancing test of *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). *See United States v. Romano, supra; United States v. Rohm and Haas Co., Inc.*, 669 F.Supp. 672 (D.N.J.1987). Four factors must be considered: (1) the nature of the individual interest; (2) the risk of error associated with the present procedures; (3) the value of additional safeguards; and (4) the government's interest in avoiding undue fiscal or administrative burdens. *Mathews*, 424 U.S. at 335, 96 S.Ct. at 903.

In this case, Alan Frank's liberty interest is at stake and therefore his individual interest in the sentencing procedure is substantial. On the other hand, the risk of error under the sentencing guidelines is great. The procedures mechanically apply the facts of a case to a formula which give little, inadequate or insignificant regard to a defendant's individual circumstances, a procedure that increases the risk of unjust and incorrect judgments. Frank is prepared to offer evidence of mitigating circumstances which, if accepted by the court, warrant leniency; however, because those circumstances have been covered by the guidelines, defendant is precluded from presenting, and the court is prohibited from determining the weight, if any, to be accorded to those mitigating factors. Thus, the risk of error in these proceedings is great.

The third factor, the value of additional procedural safeguards, also favors defendant. Providing a court with the discretion to determine the actual sentence will greatly decrease the risk of error in the sentencing process. It will enable the court to properly assess the evidence and determine an appropriate judgment of sentence for the defendant, given his circumstances.

Finally, the fiscal or administrative burdens of any additional procedural safeguards are non-existent and defendant's due process rights can be protected by permitting the court to exercise more discretion in determining an appropriate sentence. This grant of additional discretion would involve no cost to the government, the prosecution or the public at large.

In sum, we hold that the sentencing guideline procedures applicable here do not adequately protect the due process right of defendant to present evidence and to challenge the basis of his sentence before a court which has the authority to weigh the evidence and determine an appropriate sentence.

### III. *The Separation of Powers Violation*

Defendant was convicted of traveling in interstate commerce to avoid prosecution. Although he fled in November, 1986, he was not apprehended until November 5, 1987. All parties agree that the instant offense is a continuing offense and that the Sentencing Reform Act of 1984, 28 U.S.C. §§ 991–98 (1987), and the guidelines promulgated by the United States Sentencing Commission, which took effect November 1, 1987, are controlling. The Act provides

in relevant part: "There is established as an independent commission in the judicial branch of the United States a United States Sentencing Commission ..." The Act also requires that "[a]t least three of the members shall be Federal judges selected [by the President] after considering a list of six judges recommended to the president by the Judicial Conference of the United States." 28 U.S.C. § 991(a). The duties of the Commission include the promulgation of determinate sentencing guidelines and general policies regarding the application of the guidelines by sentencing judges. 28 U.S.C. § 994.

Frank contends that Congress has violated the nondelegation doctrine by delegating power to the Commission to determine criminal sanctions. Article I, Section 1 of the Constitution states: "All legislative powers herein granted shall be vested in a Congress of the United States ..." In determining whether the nondelegation doctrine has been transgressed, "we look to the statute to see whether Congress has overstepped these limitations,—whether Congress in authorizing [the Commission to create the guidelines] has itself established the standards of legal obligation, thus performing its essential legislative function, or, by the failure to enact such standards, has attempted to transfer that function to others." *A.L.A. Schechter Poultry Corporation, et al. v. United States*, 295 U.S. 495, 531, 55 S.Ct. 837, 843, 79 L.Ed. 1570 (1935). In other words, "Congress is not permitted to abdicate or to transfer to others the essential legislative functions with which it is thus vested." *Id.* at 529, 55 S.Ct. at 843.

On two occasions the Supreme Court has declared a statute unconstitutional on grounds of excessive delegation. *See Panama Refining Co. v. Ryan*, 293 U.S. 388, 55 S.Ct. 241, 79 L.Ed. 446 (1935); *A.L.A. Schechter Poultry Corporation, et al. v. United States*, 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570 (1935) Both cases involved the delegation of power to the President and in each case the Court held that Congress had failed to establish adequate standards and intelligible principles within which the President could exercise the delegated powers.

Here the Act contains clear directives and standards for the Commission to follow. The Commission is directed to punish in accordance with recognized tenets of criminal law, eliminate sentencing disparities and maintain judicial discretion. 18 U.S.C. § 991(b)(1). Congress further instructed the Commission to categorize the offenses and avoid discrimination on any basis. Our review of the Act compels us to conclude that Congress established adequate standards and intelligible principles for the Commission to follow and we hold that *Panama Refining* and *Schechter Poultry* are not controlling.

Defendant also challenges the composition of the Commission and the constitutionality of the Act by which it was created on grounds that it violates the separation of powers doctrine which is implicit in the Constitution. "Basic to the constitutional structure established by the Framers was their recognition that 'the accumulation of all powers, legislative, executive, and judiciary, in the same hands, whether of one, a few, or many, and whether hereditary, self-appointed, or elective, may justly be pronounced the very definition of tyranny.'" *Northern Pipeline Construction Co. v. Marathon Pipe Line Co., et al.*, 458 U.S. 50, 57, 102 S.Ct. 2858, 2864, 73 L.Ed.2d 598 (1982) (quoting The Federalist No. 47, p. 300 (H. Lodge ed. 1888) (J. Madison)).

It is Frank's position that the Act violates the separation of powers doctrine because the power conveyed in Article III is limited to deciding "cases" and "controversies." He also contends that the Act impairs the ability of the judiciary to perform its Article III powers because service on the Commission abrogates judicial impartiality and integrity. These arguments are interrelated and draw support from a scholarly discourse in the Yale Law Journal. The author observes:

Congress' effort to cloak the Commission's activity in judicial robes simply by placing judges on it, constitutes a deeper flaw in its constitutionality. The judiciary in our tripartite system is limited to

deciding 'cases' and 'controversies' and exercising those non-adjudicative administrative powers that are essential to the running of the courts. The authority that the Commission possesses to implement final binding action on a matter outside the peculiar interests of the judiciary and its mixed composition of judges and other presidential appointees renders the Commission unconstitutional.

By its terms, the Constitution limits the judiciary to the decision of cases and controversies. Along with the 'compensation' and 'good behavior' clauses, the case and controversy requirement reflects a commitment to the principle of judicial independence. As Alexander Hamilton argues, 'the interpretation of the laws is the proper and regular province of the courts,' and 'liberty would have everything to fear from the judiciary's union with either of the other departments.'

*The Constitutional Infirmities of the United States Sentencing Commission,* 96 Yale L.J. 1363, 1376–1377 (1987).

"The separation of powers inquiry is not so much a review of theoretical abstractions of who ought to do what as it is a pragmatic analysis of the extent to which an act by one branch of government prevents another from performing its assigned duties and disrupts the balance among the coordinate departments of government." *Geraghty v. United States Parole Commission,* 719 F.2d 1199, 1211 (3d Cir.1983), *cert. denied,* 465 U.S. 1103, 104 S.Ct. 1602, 80 L.Ed.2d 133 (1984)

In *United States v. Ruiz–Villanueva, et al.,* 680 F.Supp. 1411 (S.D.Cal.1988), the district court held that the location of the Commission in the Judicial Branch did not violate Article III, Section 2, Clause 1 because the Commission's power was exercised in furtherance of the "primarily judicial function of sentencing." *Id.* at 1420. The same result was reached in *United States v. Chambless, et al.,* 680 F.Supp. 793 (E.D.La.1988), where the court held

that the Commission, although located in the Judicial Branch, was an executive commission. In *United States v. Arnold, et al.,* 678 F.Supp. 1463 (S.D.Cal.1988), the district court concluded that the Commission is "in actuality, performing primarily executive duties and powers" and as such, "its location in the Judicial Branch offends U.S. Const., Article III, § 2, cl. 1" *Id.,* slip opinion at 16. After careful consideration of the issues before us, we adopt the analysis and holding of Judge Brewster in *Arnold.*

The government agrees that the Commission is inherently executive: "Although § 924(a) designates the Commission an independent commission in the judiciary branch, we submit that such designation is a misnomer, and that the Commission because of its function and composition, is in fact an agency of the Executive Branch." Government's Brief at 7–8. Moreover, the government acknowledges that "were the statutory label accurate and had the Commission been created as an Art. III entity, the Act could possibly offend the constitutional separation of powers principle." *Id.* at 6.

The government's position is, in our view, an accurate characterization of the Commission. "Interpreting a law enacted by Congress to implement the legislative mandate is the very essence of execution of the law." *Bowsher v. Synar,* 478 U.S. 714, 106 S.Ct. 3181, 3192, 92 L.Ed.2d 583 (1986). Indeed, if the Commission is a commission properly located in the Judicial Branch because it performs a primarily judicial function, as the court held in *Ruiz–Villanueva, supra,* we would certainly address defendant's argument that the removal powers of the President over the Commissioners in the Judicial Branch violate the separation of powers principles. Because we hold that the location of the Commission in the judicial branch violates Article III, Section 2, Clause 1 of the Constitution, we have no occasion to enter that thicket.

The United States urges that we sever the phrase of 28 U.S.C. § 991(a), wherein Congress placed the Commission in the judicial branch from the remainder of the

Act. We decline to do so for the reasons set forth in *Arnold:*

> In these circumstances, the court deems such judicial conduct inappropriate and unnecessary. In some cases, statutory language otherwise constitutional is properly severable from the statute as a whole. *Alaska Airlines, Inc. v. Brock,* 107 S.Ct. 1476, 1480–81 (1987). However, in this case, striking the designating language and effectuating a *de facto* transfer of the Commission from the Judicial Branch to a different branch or to an independent status would appear to unduly frustrate Congressional intent.

*United States v. Arnold, et al., supra,* slip opinion at 16.

The *Arnold* court properly found support in the Senate Report which expressed "the Committee's *strong* feeling that, even under the legislation, sentencing should remain primarily a judicial function. S.Rep. No. 98–225, 98th Cong., 1st Sess. (1983), *reprinted in* 1984 U.S.Code Cong. & Ad. News 3342." *United States v. Arnold, et al., supra,* slip opinion at 23, n. 10.

We also agree with Judge Brewster that "even if the court severed the designating language, the Act would still unconstitutionally violate the doctrine of separation of powers because of the composition of the Commission." *United States v. Arnold, et al., supra,* slip opinion at 17. The court held, correctly in our view, that the judge-commissioners and the Judicial Branch as a whole are unconstitutionally impaired by the Act.

"In determining whether the Act disrupts the proper balance between the coordinate branches, the proper inquiry focuses on the extent to which it prevents the [Judicial] Branch from accomplishing its constitutionally assigned functions." *Nixon v. Administrator of General Services,* 433 U.S. 425, 443, 97 S.Ct. 2777, 2790, 53 L.Ed. 2d 867 (1977). In support of his position that the Act impairs the functioning of the judiciary by requiring that three federal judges serve on the Commission, Frank cites *In re Application of President's Commission on Organized Crime, Subpoena of Scaduto,* 763 F.2d 1191 (11th Cir.1985), where the Court of Appeals for the Eleventh Circuit held that the inclusion of federal judges on the President's Commission on Organized Crime violated the separation of powers doctrine.

The Court of Appeals for the Third Circuit, when faced with the same issue, reached the opposite conclusion. *In the Matter of President's Commission on Organized Crime, Subpoena of Scarfo,* 783 F.2d 370 (3d Cir.1986).

In our judgment, the *Scaduto* and *Scarfo* panels reached different results when faced with identical issues because each court focused on the conduct of different branches. The Court of Appeals for the Eleventh Circuit focused on the obligatory duty of the judges who served on the President's Commission:

> A judge who is charged with assisting and improving enforcement efforts against organized crime must adopt a pro-government perspective which is ill-suited to his obligation to be neutral in the courtroom. The kind of information he might uncover through the investigatory activities of the Commission would further endanger his impartiality ... Moreover, even if a judge could satisfy himself that he could separate his participation on the Commission from his judicial functions, it is not clear that litigants could sustain equal faith in his impartiality.

*Scaduto, supra* at 1197.

The Court of Appeals for the Third Circuit on the other hand disagreed with this approach:

> The *Scaduto* majority found objectionable the "conferring" of powers on a judge that might lead to questions of his impartiality. But we think it more accurate to focus on the voluntary acceptance of that authority by judicial officers. The attention should be on the judge's conduct and not that of those who tendered, but did not impose, the powers.

*Scarfo, supra* at 378.

■ Thus, we conclude that because the service of federal judges on the Sentencing Commission is mandated under 28 U.S.C.

§ 991(a), and is not voluntary as was the service of the judges on the Commission in *Scarfo*, our focus is appropriately on the conduct of Congress, rather than on the conduct of the judge-Commissioners. We therefore adopt the reasoning of the *Arnold* court which held that the same threat to impartiality and independence of the judiciary discussed in *Scaduto* is present with respect to the mandatory service of the federal judges on the Sentencing Commission. We hold that Congress has violated the separation of powers doctrine by requiring that federal judges serve on an executive commission and perform executive functions. The Sentencing Reform Act is unconstitutional.

The broader issue presented here has been debated throughout the history of the Republic with differing results and no doubt the role of federal judges will be debated by both the United States and defendants until the issue is resolved by the Supreme Court. In reaching our decision, we are guided by the principles of a tripartite system of government and our understanding that "checks and balances were the foundation of a structure of government that would protect liberty." *Bowsher v. Synar*, 478 U.S. 714, 106 S.Ct. 3181, 3186. Even though the three branches of government perform distinct responsibilities, "[t]he hydraulic pressure inherent within each of the separate branches to exceed the outer limits of its power, even to accomplish desirable objectives must be resisted." *INS v. Chadha*, 462 U.S. 919, 951, 103 S.Ct. 2764, 2784, 77 L.Ed.2d 317 (1983). As one scholar has noted:

> In 1793, the Justices of the Jay Court responded to an inquiry by Thomas Jefferson whether the judiciary would make itself available to advise the executive on legal questions, by stating that 'the lines of separation between the three departments of government' forbade the judiciary from extra-judicially advising the president. As Felix Frankfurter noted, such an activity would have 'involved the judges too intimately in the process of. policy and thereby weakened confidence in the disinterestedness of their judicatory functions.'

*The Constitutional Infirmities of the United States Sentencing Commission*, 96 Yale L.J. 1363, 1379 (1987).

We hold that the mandatory inclusion of Article III judges as members of the Sentencing Commission violates the separation of powers doctrine and renders unconstitutional the Sentencing Reform Act of 1984 and the work product of the Commission, namely, the Sentencing Guidelines.

## IV.

Defendant next contends that the sentencing guidelines are invalid because they unduly restrict the availability of probation, contrary to the intent of Congress. Section 994(j) of the Act provides that the Sentencing Commission "shall insure that the guidelines reflect the appropriateness of imposing a sentence other than imprisonment in cases in which the defendant is a first offender who has not been convicted of a crime of violence or otherwise serious offense." 28 U.S.C. § 994(j). Section 3561 proscribes probation for those who are convicted of Class A or B felonies. 18 U.S.C. § 3561. Defendant contends that sections 994 and 3561 reflect Congressional intent to make probation available to non-serious first offenders. Since the guidelines restrict that option, Frank argues, they violate due process because they "go well beyond the statutory prohibitions and mandate of section 994(j)." We disagree.

Defendant's reliance on the due process clause in this context is novel, and his citation to *Whalen v. United States*, 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980) is misplaced. *Whalen* holds that a court violates the separation of powers doctrine when a greater sentence is imposed than authorized by Congress, a situation not present here.

The guidelines became effective with the consent of Congress, *see* Comprehensive Crime Control Act of 1984, Pub.L. No. 98–473, § 235(a)(1)(B)(ii), 98 Stat. 2031–32; 28 U.S.C. § 994(p), and it is difficult to conclude that they "go well beyond" the intent of Congress.

Frank also argues that the guidelines violate due process because the criminal

history point scale is based on past sentencing practices which are condemned by the Sentencing Reform Act. Although the use of prior sentencing practices to establish a point scale for a defendant's criminal history is inconsistent with the Act's premise, Frank has no prior criminal record and therefore, the point scale is inapplicable to him. *See United States v. Palma*, 760 F.2d 475 (3d Cir.1985).

Defendant next contends that 18 U.S.C. § 3553(c)(1) violates equal protection because a district court is authorized to impose, without explanation, a sentence within Frank's sentencing range when that range is 24 months or less. Defendant does not contend that the classification is suspect or impinges upon a fundamental interest; rather, he asserts that the classification bears no rational relation to a legitimate state interest. We disagree.

Under prior law, Frank had no right to an explanation of the reasons for any sentence that the court might impose. Hence, defendant is arguing that creation of that right in others denies him equal protection.

Originally, section 3553 required a district court to provide reasons for all sentences. Congress amended the Act and now a district court is required to state reasons for sentences within the sentence range only if the range exceeds 24 months. 18 U.S.C. § 3553(c)(1), as amended, Pub.L. No. 100–182, § 17 (December 7, 1987). The amendment was enacted to reduce the burden on the courts. Congress concluded that the required statement of reasons for longer sentences satisfied the purpose of achieving fairness with less disparity in sentencing. S. 1822, 100th Cong., 1st Sess., 133 Cong.Rec. H10018 (1987). Fairness in criminal sentences is a legitimate state interest.

The remaining arguments of Alan Frank are without merit and require no further discussion. An appropriate order will follow.

### ORDER OF COURT

AND NOW, this 30th day of March, 1988, in accordance with the foregoing opinion,

IT IS ORDERED that the Sentencing Reform Act 28 U.S.C. § 991–98 (1987), be and hereby is declared to be unconstitutional as violative of the separation of powers doctrine of the Constitution.

IT IS FURTHER ORDERED that the Sentencing Guidelines of the United States Sentencing Commission be and hereby are declared to be unconstitutional as violative of the Due Process Clause of the Fifth Amendment.