**UNITED STATES of America, Plaintiff,**

v.

**Ramon ROSARIO, Defendant.**

**No. 87 CR 968.**

United States District Court,
N.D. Illinois, E.D.

June 23, 1988.

Anton R. Valukas, U.S. Atty. by Barry Rand Elden and Lisa A. Huestis, Asst. U.S. Attys., Chicago, Ill., for plaintiff.

George J. Murtaugh, Jr., James M. Obbish, Chicago, Ill., for defendant.

ORDER

BUA, District Judge.

The case of defendant Ramon Rosario presents this court with its first opportunity to apply the Sentencing Guidelines recently promulgated by the U.S. Sentencing Commission. Before sentencing Rosario, however, the court must determine whether or not the Guidelines are constitutional.[1] Numerous judges have traveled this road before; already, dozens of courts across the nation have declared the Guidelines unconstitutional.[2] Following in their footsteps, this court concludes that the participation of Article III judges in the Guidelines' creation unconstitutionally contravenes the principle of separation of powers. In light of this constitutional infirmity, the court refuses to adhere to the Guidelines.

The separation of powers plays a particularly vital role in insuring the proper functioning of the federal judiciary. By insulating the judiciary from the other branches of government, the Constitution preserves the independence and impartiality of the federal courts: "The Federal Judiciary was ... designed by the Framers to stand independent of the Executive and Legislature— to maintain the checks and balances of the constitutional structure, and also to guarantee that the process of adjudication itself remained impartial." *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 58, 102 S.Ct. 2858, 2864, 73 L.Ed.2d 598 (1982). The Framers realized that excessive judicial entanglement in executive or legislative affairs could irreparably tarnish the judiciary's image as an impartial arbiter: "Discharging tasks other

---

**1.** The Supreme Court recently granted certiorari on the question of the Guidelines' constitutionality. *United States v. Mistretta*, 682 F.Supp. 1033 (W.D.Mo.1988), *cert. granted,* —— U.S. ——, 108 S.Ct. 2818, 100 L.Ed.2d 920, Nos. 87–1904, 87–7028 (U.S. June 13, 1988). Ultimately, the Justices will resolve this issue once and for all; but the High Court will not issue its opinion on the Guidelines for several months. Considering the number of criminal defendants who will be sentenced in the meantime, this court feels compelled to make an immediate ruling on the constitutionality of the Guidelines.

**2.** *See, e.g., United States v. Brittman,* 687 F.Supp. 1329 (E.D.Ark.1988); *United States v. Brodie,* 686

F.Supp. 941 (D.D.C.1988); *United States v. Ortega Lopez,* 684 F.Supp. 1506 (C.D.Cal.1988); *United States v. Bolding,* 683 F.Supp. 1003 (D.Md. 1988); *United States v. Frank,* 682 F.Supp. 815 (W.D.Pa.1988); *United States v. Estrada,* 680 F.Supp. 1312 (D.Minn.1988); *United States v. Smith,* 686 F.Supp. 847 (D.Colo.1988).

Different courts have adopted different rationales for striking down the Guidelines. For an excellent summation of the various constitutional attacks on the Guidelines, see Judge Eisele's exhaustive and insightful opinion in *Brittman, supra.*

than the deciding of cases and controversies would 'involve the judges too intimately in the process of policy and thereby weaken confidence in the disinterestedness of their judicatory functions.'" *In re Sealed Case,* 838 F.2d 476, 512 (D.C.Cir. 1988) (quoting F. Frankfurter, *Advisory Opinions,* in 1 Encyclopedia of the Social Sciences 475, 478 (1930)). Consistent with the Framers' efforts to safeguard judicial integrity, the courts have meticulously maintained the separation of powers, carefully circumscribing the activities of judges outside the judicial domain. Historically, the Supreme Court has prohibited Article III judges from assuming administrative or legislative duties normally reserved for the other branches of government. *See Buckley v. Valeo,* 424 U.S. 1, 123, 96 S.Ct. 612, 684, 46 L.Ed.2d 659 (1976); *United States v. Ferreira,* 54 U.S. (13 How.) 40, 14 L.Ed. 40 (1852); *Hayburn's Case,* 2 U.S. (2 Dall.) 409, 1 L.Ed. 436 (1792).

By requiring three federal judges to serve on the Sentencing Commission, Congress has undermined the judiciary's painstaking efforts to keep its distance from the rest of the government. Pursuant to the Sentencing Reform Act of 1984, 28 U.S.C. §§ 991–998 (Supp. III 1985), Congress entrusted the Sentencing Commission with the formidable task of overhauling criminal sentencing practices in the federal courts. Regardless of whether the Commission's work is best described as executive[3] or legislative[4] in nature, one thing is certain: The judges who serve on the Commission engage in an obviously extrajudicial activity. If the Commission were simply drafting procedural rules, then judges could assume their nonjudicial responsibilities as Commissioners without offending the Constitution. *See Sibbach v. Wilson & Co.,* 312 U.S. 1, 61 S.Ct. 422, 85 L.Ed. 479 (1941). The work of the Commission, however, transcends mere procedure; it directly affects the substantive law of criminal sentencing. *Cf. Miller v. Florida,* —— U.S. ——, 107 S.Ct. 2446, 2453, 96 L.Ed.2d 351 (1987) (characterizing change in Florida's sentencing guidelines as substantive rather than procedural). As members of the Commission, Article III judges actively participate in the formulation of sentencing guidelines that substantially shape criminal penalties for all federal offenses. The integral involvement of judges in the formation of sentencing policy far exceeds the limited role that the Framers envisioned for the judiciary.[5]

The dual role of "judge-Commissioner" is simply incompatible with the separation of powers; judges' participation on the Sentencing Commission hinders their ability to perform their constitutionally assigned function. *See Nixon v. Adm'r of General Services,* 433 U.S. 425, 443, 97 S.Ct. 2777, 2790, 53 L.Ed.2d 867 (1977). After all, the judge-Commissioners may ultimately have to interpret and apply the very Guidelines that they helped to design. It hardly seems likely that these judges can maintain a neutral perspective when assessing their own handiwork. Thus, the mandatory inclusion of judges on the Sentencing Commission seriously compromises the impartiality so essential to the proper functioning of the federal judiciary. *United States v. Brittman,* 687 F.Supp. 1329 (E.D.Ark.

---

**3.** *See, e.g., United States v. Frank,* 682 F.Supp. 815, 821 (W.D.Pa.1988).

**4.** *See, e.g., United States v. Brittman,* 687 F.Supp. 1329 (E.D.Ark.1988).

**5.** *Cf. In re Application of President's Comm'n on Organized Crime, Subpoena of Scaduto,* 763 F.2d 1191 (11th Cir.1985) (participation of judges on the Organized Crime Commission, even in a merely advisory capacity, violated the separation of powers). The Third Circuit rejected *Scaduto*'s conclusion, ruling that the composition of the Commission on Organized Crime did not violate the separation of powers. *In the Matter of President's Comm'n on Organized Crime, Subpoena of Scarfo,* 783 F.2d 370 (3d Cir.1986). The *Scarfo* court, however, emphasized that the judges on the Organized Crime Commission served voluntarily. *Id.* at 376–78. By contrast, the Sentencing Reform Act mandates that the Sentencing Commission include three federal judges as members. 28 U.S.C. § 991(a) (Supp. III 1985). The mandatory nature of judicial service on the Sentencing Commission clearly conflicts with the principle of separation of powers. *Frank,* 682 F.Supp. at 822–23.

428

1988); *United States v. Estrada,* 680 F.Supp. 1312, 1334–35 (D.Minn.1988).

The President's power to remove Commissioners only compounds the constitutional problems inherent in the Commission's composition. Service on the Sentencing Commission subjects Article III judges to the direct control of the President, who wields both the carrot of appointment and the stick of removal. *United States v. Ortega Lopez,* 684 F.Supp. 1506 (C.D.Cal. 1988); *Estrada,* 680 F.Supp. at 1332–33. As the Supreme Court recognized when it struck down certain provisions of the Gramm–Rudman–Hollings Act, one branch of government cannot exert undue influence over another without subverting the separation of powers. *See Bowsher v. Synar,* 478 U.S. 714, 106 S.Ct. 3181, 92 L.Ed. 2d 583 (1986) (Congressional power to remove Comptroller General, who performs executive functions, violates the separation of powers). The removal power bestowed on the President by the Sentencing Reform Act flies in the face of *Bowsher.* Merely by creating the appearance of executive influence over judicial conduct, the President's power to remove judges from the Sentencing Commission erodes the integrity of the federal judiciary. Much like the judges' participation on the Commission, the President's power to terminate that participation violates the separation of powers.

For all its constitutional deficiencies, the Sentencing Commission labored earnestly in pursuit of an admirable goal—the creation of a more rational, more consistent process of criminal sentencing. The Commission's noble aspirations, however, cannot justify its innately unconstitutional structure: "The hydraulic pressure inherent within each of the separate Branches to exceed the outer limits of its power, even to accomplish desirable objectives, must be resisted." *INS v. Chadha,* 462 U.S. 919, 951, 103 S.Ct. 2764, 2784, 77 L.Ed.2d 317 (1983). Because Congress has structured

the Sentencing Commission in a manner that violates separation of powers principles, this court declares the Sentencing Guidelines unconstitutional.[6]

IT IS SO ORDERED.

---

6. Having found the Guidelines unconstitutional on the basis of the separation of powers doctrine, the court sees no need to address any of the other constitutional attacks on the Guidelines. Nonetheless, several courts have persuasively asserted that the mechanical method of sentencing imposed by the Guidelines violates the due process rights of criminal defendants. *See, e.g., Brittman, supra; Lopez, supra; Frank,* 682 F.Supp. at 816–19.