**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Charles PERRY, Defendant–Appellant.**

**No. 89–1839.**

United States Court of Appeals,
Sixth Circuit.

Argued March 8, 1990.

Decided July 11, 1990.

Richard J. Amberg (argued), Pontiac, Mich., for defendant-appellant.

Before WELLFORD and NELSON, Circuit Judges, and EDWARDS, Senior Circuit Judge.

DAVID A. NELSON, Circuit Judge.

This is an appeal from a sentence imposed under the U.S. Sentencing Guidelines following the defendant's conviction for conspiracy to distribute cocaine. The trial court increased the offense level under Guideline § 3C1.1 because the defendant fled the jurisdiction while on bond pending sentencing. The defendant challenges this increase, as well as contesting a finding that he was not a "minor participant" in the conspiracy. He also moves to have us appoint a new lawyer for him. We shall deny the motion and affirm the sentence.

## I

The defendant, Charles Perry, was indicted on one count of conspiracy to distribute a Schedule II controlled substance. Evidence presented at trial linked him to a cocaine ring headed by a man named Johnny Henderson. The ring distributed hundreds of kilograms of cocaine in the Flint, Michigan, area.

Mr. Perry was arrested at a house in Flint with Johnny Henderson and three other participants in the conspiracy. There was evidence that Mr. Perry lived at the house, which was owned by Johnny Henderson's father. A search of the residence turned up crack cocaine, marijuana, various weapons and ammunition, currency, a police scanner, and drug paraphernalia.

Robert Kelly, a shoplifter, testified that for six or seven months he made daily deliveries of stolen clothing to Mr. Perry, receiving cocaine in exchange. The clothes were then sold at a store operated by Wanda Henderson. Witnesses indicated that Mr. Perry had visited Wanda Henderson's house a number of times.

Darrell Robertson, who pleaded guilty, testified that he and another defendant once helped Mr. Perry weigh half a kilo-

Jennifer J. Peregord (argued), Office of the U.S. Atty., Detroit, Mich. and Mark C. Jones, Asst. U.S. Atty., Office of the U.S. Atty., Flint, Mich., for plaintiff-appellee.

gram of cocaine and package it in one ounce bags. Robertson also said that he "cooked" cocaine (converted powdered cocaine into crack) for Mr. Perry and others.

Mr. Perry was convicted on August 1, 1988, but remained on bond pending sentencing because he was in a drug rehabilitation center. He was instructed to report for an interview with a probation officer on August 2, but failed to keep the appointment. An arrest warrant was issued the next day. Mr. Perry remained a fugitive until April 7, 1989, when he was arrested in Chicago.

The district court took Mr. Perry's flight into account in calculating the guideline range for his sentence; the offense level was increased by two points under Guideline § 3C1.1 for impeding or obstructing the administration of justice. After rejecting a suggestion that the offense level should be reduced under Guideline § 3B1.2 because Mr. Perry was only a "minor participant" in the drug conspiracy, the court sentenced him to imprisonment for 300 months, with a three-year period of supervised release to follow that term. The sentence was within the guideline range as calculated by the court.

## II

The commentary to § 3B1.2 indicates that the "minor participant" reduction is available only to a party who is "less culpable than most other participants" and "substantially less culpable than the average participant." The culpability determination is "heavily dependent upon the facts," id., and the defendant has the burden of proving mitigating factors by a preponderance of the evidence. *United States v. Urrego–Linares*, 879 F.2d 1234, 1238–39 (4th Cir.), cert. denied, — U.S. —, 110 S.Ct. 346, 107 L.Ed.2d 334 (1989) (opinion by Judge Wilkins, chairman of the Sentencing Commission). A trial court's decision on such issues may be set aside only if clearly erroneous. 18 U.S.C. § 3742(d); see also *United States v. Williams*, 894 F.2d 208, 213–14 (6th Cir.1990). "To be clearly erroneous," as the Court of Appeals for the Seventh Circuit has said in a differ-

ent context, "a decision must strike us as more than just maybe or probably wrong; it must ... strike us as wrong with the force of a five-week-old, unrefrigerated dead fish." *Parts and Elec. Motors, Inc. v. Sterling Elec., Inc.*, 866 F.2d 228, 233 (7th Cir.1988), cert. denied, — U.S. —, 110 S.Ct. 141, 107 L.Ed.2d 100 (1989).

Mr. Perry relies primarily upon a letter from the Assistant United States Attorney ranking Mr. Perry and his six co-defendants according to culpability. The letter listed Johnny Henderson as the most culpable and Annette Gray as the least culpable. Mr. Perry was placed on the next-to-bottom rung of this ladder, immediately above Ms. Gray. The government maintains that the letter was not intended to suggest that Perry had played only a minor role in the conspiracy.

Although Mr. Perry may have been less culpable than most other participants, we cannot say that his part in the conspiracy made him "substantially less culpable than the average participant." First, Mr. Perry was arrested in the company of major co-conspirators, including Johnny Henderson, at a house that could properly be found to have been Perry's own residence. Second, Darrell Robertson, who regularly purchased cocaine from Johnny Henderson, testified that Mr. Perry helped him in weighing and packaging approximately half a kilogram of cocaine. Third, Robertson stated that Mr. Perry carried an automatic or semi-automatic weapon in a briefcase on at least one occasion. Although the Assistant United States Attorney erroneously told the trial court at sentencing that the testimony indicated Perry was seen carrying a machine gun in a suitcase, defense counsel alerted the sentencing judge to this error. Fourth, Russell Brown testified that he saw Mr. Perry with cocaine at various drug houses and saw him drop off $15,000 in cash and several ounces of cocaine at one drug house. The district court's conclusion that Mr. Perry was not substantially less culpable than the average member of the conspiracy is not clearly erroneous.

## III

■ Section 3C1.1 of the Sentencing Guidelines provides as follows:

"If the defendant willfully impeded or obstructed, or attempted to impede or obstruct the administration of justice during the investigation or prosecution of the instant offense, increase the offense level by 2 levels."

The trial court made a two-level increase under this section because Mr. Perry jumped bond before sentencing and was not apprehended until the better part of a year had passed. Although no sentencing date had been set when Mr. Perry fled, he admits that he had been instructed to report to the probation officer and failed to do so. Mr. Perry offers no principled reason why his flight, which delayed his sentencing by some eight months, should not be considered to have "impeded" the administration of justice in the course of the prosecution. The conduct in question was certainly more serious, and had a greater impact on the proceedings, than giving a false name at the time of arrest—an action that has been held to justify an increase under this section. *United States v. Brett,* 872 F.2d 1365 (8th Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 322, 107 L.Ed.2d 312 (1989). The prosecution of an offense includes the sentencing proceedings, so it is clear that Mr. Perry's attempt to avoid incarceration occurred "during ... the prosecution of the instant offense."

Whether Mr. Perry could have been prosecuted separately for failing to appear is irrelevant. Even if such a prosecution would have been possible, the district court may, in its discretion, consider uncharged criminal activity:

"Title 18, U.S.C. § 3577, states that '[n]o limitations shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.' Courts have noted that 'this statute was enacted in order to clearly authorize the trial judge to rely upon information of alleged criminal activity for which the defendant had not been prosecuted....' *Smith v. United States,* 551 F.2d 1193, 1196 (10th Cir.), *cert. denied,* 434 U.S. 830 [98 S.Ct. 113, 54 L.Ed.2d 90] (1977) (citing *United States v. Tucker,* 404 U.S. 443, [92 S.Ct. 589, 30 L.Ed.2d 592] (1972); *Williams v. People of the State of New York,* 337 U.S. 241 [69 S.Ct. 1079, 93 L.Ed. 1337] (1949))." *United States v. Robinson,* 898 F.2d 1111, 1115 (6th Cir.1990).

That a sentencing date had not been set is also irrelevant. Mr. Perry was no stranger to the criminal justice system, and he can doubtless be presumed to have known that he was not free to decamp after his conviction. It is enough, in any event, that he disobeyed an instruction to report to the probation officer. If providing false information to the probation officer in the course of a pre-sentence investigation falls within this guideline, as the Application Notes to § 3C1.1 say it does, so does failing to report to the probation officer at all.

## IV

■ Finally, we come to Mr. Perry's motion to have the court-appointed counsel who represented him at trial replaced on appeal. Mr. Perry apparently wanted his lawyer to challenge the Sentencing Guidelines on due process grounds, as was done in *United States v. Frank,* 682 F.Supp. 815 (W.D.Pa.), *sentence vacated,* 864 F.2d 992 (3d Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 2442, 104 L.Ed.2d 998 (1989), and *United States v. Ortega Lopez,* 684 F.Supp. 1506 (C.D.Cal.1988) (*en banc*), *rejected by United States v. Brady,* 895 F.2d 538, 540–42 (9th Cir.1990). The lawyer chose instead to confine himself to the two issues addressed above. Given our recent decisions rejecting the due process argument, *United States v. Allen,* 873 F.2d 963, 966 (6th Cir.1989); *United States v. Jacobs,* 877 F.2d 460, 462 (6th Cir.1989), it is clear that the course urged by Mr. Perry would have been unavailing. Tactical choices of this sort are properly left to the sound professional judgment of counsel in any event. See *Jones v. Barnes,* 463 U.S. 745,

**60**

751, 103 S.Ct. 3308, 3312, 77 L.Ed.2d 987 (1983) (holding that an indigent defendant does not have a constitutional right to press issues, even if non-frivolous, which counsel in his professional judgment decides not to present). Mr. Perry's other arguments for replacement of the lawyer are not persuasive.

The motion for substitution of court-appointed counsel is DENIED, and the sentence of the district court is AFFIRMED.

WELLFORD, Circuit Judge, concurring in part:

I have no difficulties with respect to parts I, II, and IV of the opinion. As to part III, however, I note that the government might have chosen to prosecute Perry separately for violation of his appearance bond, or might still opt to do so. I have some questions, however, in the absence of such separate prosecution, about using defendant's flight while on bond as a means to enhance the punishment of a drug conspiracy.

I concur in the result reached, being persuaded that the interpretation of § 3C1.1 is a permissible one.