11-5467(L)
United States v. Hoggard

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT.  CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY THIS COURT'S LOCAL RULE 32.1.1 AND FEDERAL RULE OF APPELLATE PROCEDURE 32.1.  WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").  A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 30th day of April, two thousand thirteen.

Present:     BARRINGTON D. PARKER,
             SUSAN L. CARNEY,
                  *Circuit Judges*,
             JED S. RAKOFF,
                  *District Judge.*[*]

---

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| *Appellee,* | |
| v. | Nos.  11-5467(L) |
| | 10-2554 (Con) |
| ROBERT RAWLS, CHARLES BUNCH, aka June, CHRISTOPHER LAMONT SHERMAN, aka C-L, TORRANCE MCCOWN, aka Terrance McCown, aka Jake, WILLIAM BALDWIN, WILLIAM HOLLY, aka L-O, JASON MARCEL DOCKERY, KENNETH THAMES, aka K-T, JOHN HOBSON, aka Uncle John, aka Big John, KENNETH WHITE, aka Do Wop, GLORIA WILLIAMS, aka Glo, DANTE COBB, CARNEL SYLVESTER EDWARDS, TERRANCE JOWERS, aka T-Nice, MAURIEL GLOVER, aka Feet, | |
| *Defendants,* | |

---

[*]  The Honorable Jed S. Rakoff, United States District Judge for the Southern District of New York, sitting by designation.

GENERO MARTE, G, ROSHAUN HOGGARD,
aka Foot,

Defendants-Appellants.

_____

FOR APPELLANTS: David Segal, New York, NY (*for* Defendant-
Appellant Genero Marte).

DAVID S. HAMMER, New York, NY (*for* Defendant-
Appellant Roshaun Hoggard).

FOR APPELLEE: H. GORDON HALL (Sandra S. Glover, *on the brief*),
Assistant United States Attorneys, *for* David B.
Fein, United States Attorney for the District of
Connecticut, New Haven, CT.

Appeal from the United States District Court for the District of Connecticut

(Janet C. Hall, <u>Judge</u>).

**UPON DUE CONSIDERATION**, it is hereby **ORDERED, ADJUDGED,** and

**DECREED** that the judgments of the District Court are **AFFIRMED**.

Defendants-Appellants Genero Marte and Roshaun Hoggard appeal from

judgments of conviction entered November 30, 2009, and June 22, 2010,

respectively. Both men were convicted after a jury trial for their role in a crack

cocaine distribution ring based in the Bronx, New York, and New Haven,

Connecticut. Marte was convicted of one count of conspiracy to possess with intent

to distribute fifty grams or more of cocaine base, and sentenced principally to 204

months' imprisonment. Hoggard was convicted of one count of conspiracy to possess

with intent to distribute fifty grams or more of cocaine base, and one count of

possession with intent to distribute five grams or more of cocaine base. He was

sentenced principally to 288 months' imprisonment on each count, with the

2

sentences to run concurrently. We assume the parties' familiarity with the facts and record of the prior proceedings, to which we refer only as necessary to explain our decision to affirm.

On appeal, both defendants argue that the evidence was insufficient to sustain their convictions. Hoggard also claims that the evidence presented at trial varied from the indictment, and that he suffered prejudice as a result. Finally, both defendants challenge their sentences on two grounds. First, they assert that the District Court erred in its calculation of attributable drug quantities. Second, they argue that the District Court should not have increased their Guideline offense levels under U.S.S.G. § 3B1.1(a), the sentencing enhancement for individuals who organize or lead criminal activity involving five or more participants.

1.    Sufficiency of the Evidence

The defendants attack different aspects of the evidence supporting their convictions. Marte challenges the government's identification of him as the individual known as "G," who was recorded on wiretapped phone calls discussing drug transactions. Hoggard argues that the evidence adduced at trial did not establish that he conspired with others to distribute drugs; at most, he contends, the evidence showed that he was a mere buyer and seller of narcotics.

We review *de novo* a defendant's challenge to the sufficiency of the evidence supporting a jury's verdict, "viewing the evidence presented in the light most favorable to the government, and drawing all reasonable inferences in its favor." United States v. Davis, 690 F.3d 127, 130 (2d Cir. 2012) (internal quotation marks and alterations omitted). A defendant bears a heavy burden in a sufficiency

3

challenge, because we "uphold the jury's verdict as long as '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" United States v. Rojas, 617 F.3d 669, 674 (2d Cir. 2010) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)).

The evidence was overwhelming that Marte was the individual identified as "G" in the recorded phone calls. When Marte was arrested, he was in possession of the cellular phone assigned the same telephone number as used by "G." Mauriel Glover, a New Haven drug dealer called as a witness by the government, identified Marte at trial and testified that he knew Marte as "G." And a DEA agent testified that, after speaking with Marte, he and his partner compared Marte's voice to the voice of "G" in the recorded phone calls, and determined that the voices "were an exact match." Gov't App. 1167.

We find Hoggard's sufficiency challenge similarly unavailing. To establish a conspiracy, the government needed to prove that Hoggard and at least one other person "agreed to participate in a joint venture intended to commit an unlawful act." United States v. Parker, 554 F.3d 230, 234 (2d Cir. 2009) (internal quotation marks omitted). The government did not need to prove that "the defendant knew all of the details of the conspiracy," or that the defendant knew the other conspirators' identities. United States v. Chavez, 549 F.3d 119, 125 (2d Cir. 2008) (internal quotation marks omitted). Nevertheless, in the context of narcotics conspiracies, "the existence of a buyer-seller relationship does not *itself* establish a conspiracy." United States v. Hawkins, 547 F.3d 66, 72 (2d Cir. 2008). Rather, the government must show "an agreement to join together to accomplish an objective

4

beyond the sale transaction," id., such as a shared intent "to advance other transfers," Parker, 554 F.3d at 235.

Here, the government presented sufficient evidence for the jury to conclude beyond a reasonable doubt that Hoggard participated in a conspiracy with Marte and others to distribute cocaine. Jurors heard a recorded call between Hoggard and Christopher Sherman, another New Haven-area drug dealer, in which Hoggard discussed his plan to return defective crack cocaine to Marte in the Bronx. Sherman offered to "make a couple calls" to see if he could "off it first." Gov't App. 1600-01. When police later arrested Sherman and seized 272 grams of cocaine from him, Hoggard called another alleged co-conspirator and discussed whether to pay Sherman's bond, whether to hire a lawyer for his defense, and how to obtain drugs on credit to make up for the drugs lost in the seizure. In addition, the jury heard testimony from Kenneth Thames, a low-level drug dealer who purchased his crack from Hoggard. Thames explained that he and Hoggard employed certain code words to signal different drug quantities, and the jury heard a number of recorded telephone calls between Hoggard and Thames corroborating this testimony. Thames also testified that Hoggard was the only person he knew who had access to "eight-ball" quantities of crack cocaine (3.5 grams). This evidence contradicts Hoggard's assertion that he engaged in a series of isolated drug purchases and sales. Instead, the calls permit a rational juror to conclude that Hoggard, Marte, Sherman, and others were working together in an organized conspiracy to distribute cocaine.

2.    <u>Variance</u>

Hoggard asserts that although the indictment charged a single conspiracy, the evidence at trial actually showed two independent cocaine distribution rings in New Haven: one involving him, and the other involving Sherman. Hoggard argues that this variance caused him prejudice, because by charging only a single conspiracy, the government was permitted to introduce damaging and dramatic evidence about the cocaine police seized from Sherman shortly after Sherman left Hoggard's presence.

"A variance occurs when the charging terms of the indictment are left unaltered, but the evidence offered at trial proves facts materially different from those alleged in the indictment." <u>United States v. Banki</u>, 685 F.3d 99, 119 (2d Cir. 2012) (internal quotation marks omitted). Even if a defendant shows a divergence between the indictment and proof at trial, however, we will not reverse the conviction unless the variance caused the defendant "substantial prejudice." <u>United States v. Geibel</u>, 369 F.3d 682, 693 (2d Cir. 2004) (internal quotation marks omitted). To determine whether the defendant suffered substantial prejudice, "the essential question is whether the jury convicted the defendant on evidence unrelated to his own alleged activity." <u>Id.</u> (internal quotation marks omitted).

We find no variance here because the evidence at trial was consistent with the allegation in the indictment that Hoggard and Sherman were members of the same conspiracy. In addition to the phone call described above, in which Sherman offered to help Hoggard sell defective cocaine, the jury heard evidence about Hoggard and Sherman's interactions on the night of Sherman's arrest. On that

6

evening, Hoggard, Sherman, and another individual drove together from New Haven to the Bronx to purchase cocaine from Marte. When they returned to New Haven, Sherman and the other individual dropped Hoggard off at his house and pulled away. Several blocks from Hoggard's home, officers stopped the car in which Sherman was a passenger and, after a brief chase through the backyards of neighboring homes, arrested Sherman and recovered cocaine that he had discarded.

Although we conclude that the evidence at trial was consistent with the indictment, even if we assume a variance occurred, Hoggard was not prejudiced. Because the jury could have concluded that Hoggard and Sherman worked in concert on the night of Sherman's arrest, we cannot say that the cocaine that police seized from Sherman was "unrelated to [Hoggard's] own alleged activity." Geibel, 369 F.3d at 693.

### 3.    Drug Quantity Calculation

The Sentencing Guidelines provide that a defendant is responsible for "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." U.S.S.G. § 1B1.3(a)(1)(B). In the case of a narcotics conviction, "the defendant is accountable for all quantities of contraband with which he was directly involved and, in the case of a jointly undertaken criminal activity, all reasonably foreseeable quantities of contraband that were within the scope of the criminal activity that he jointly undertook." Id. § 1B1.3 cmt. n.2. "Where there is no drug seizure or the amount seized does not reflect the scale of the offense, the court shall approximate the quantity of the controlled substance." Id. § 2D1.1 cmt. n.12. In such a case, the court must make a quantity determination based on the

7

preponderance of the evidence, and we review its finding for clear error. United States v. Batista, 684 F.3d 333, 344 (2d Cir. 2012).

### A.    Marte

The District Court determined that Marte was responsible for 5.6 kilograms of cocaine, based on his sales to three individuals: Hoggard, Sherman, and Glover (the New Haven-area drug dealer who testified on behalf of the government).  To determine the quantities that Sherman and Glover purchased from Marte, the court relied in part on statements these two individuals made to authorities after their arrests.  Marte argues that these statements were presumptively unreliable, and that the District Court erred by relying on them.

We see no clear error in the District Court's decision to credit these statements.  We have held that district courts may rely on hearsay statements at sentencing without violating the Confrontation Clause, as long as the statements bear at least some indicia of reliability.  See United States v. Martinez, 413 F.3d 239, 244 (2d Cir. 2005).  Here, Sherman's and Glover's statements were adequately corroborated by phone calls in which Hoggard and Glover discussed purchasing drugs from Marte; calls in which Sherman and Hoggard discussed purchases of over 100 grams from Marte; and the 272 grams of cocaine police recovered from Sherman the night of his arrest.

### B.    Hoggard

The court concluded that Hoggard was responsible for 3.5 kilograms of crack cocaine.  In reaching this figure, the court first determined that Sherman purchased 1.4 kilograms from Marte, and attributed this amount to Hoggard as "relevant

8

conduct" under the Guidelines. See U.S.S.G. § 1B1.3. The court then added to this sum 2.1 kilograms that it determined Hoggard purchased from Marte. Hoggard challenges both components of this quantity finding.

The District Court properly attributed to Hoggard its estimate of the quantity of drugs Sherman purchased, because the evidence was sufficient to conclude that Sherman and Hoggard were co-conspirators, and that Hoggard "could reasonably have foreseen the quantity" of Sherman's purchases. United States v. Snow, 462 F.3d 55, 72 (2d Cir. 2006). As described above, phone calls between Hoggard and Sherman showed that the two communicated about their drug venture and made at least one resupply trip together. In a phone call made after Sherman's arrest, Hoggard told another co-conspirator that Sherman had "two seventy two . . . on him" at the time of his arrest. Gov't App. 1662. This statement is consistent with the 272 grams of cocaine police seized from Sherman. From this evidence, the District Court could conclude that Hoggard was well aware of the quantities of drugs that Sherman purchased and sold.

We find unavailing Hoggard's contention that the District Court improperly failed to make particularized findings about the scope of the conspiracy. See United States v. Studley, 47 F.3d 569, 574 (2d Cir. 1995). Had the District Court done so, Hoggard argues, it would not have attributed Sherman's purchases to Hoggard. But Hoggard's counsel did not ask the court to make a Studley finding at the time of sentencing. Perhaps more significantly, his counsel did not challenge the District Court's decision to attribute Sherman's purchases to Hoggard. Although Hoggard's counsel suggested at the sentencing hearing that a quantity of 3.4 kilograms (which

9

would have reduced Hoggard's base offense by two levels) might be more appropriate, this position was based on a challenge to the start dates the District Court ascribed to Hoggard's and Sherman's purchases — not on an argument that Sherman's purchases should be excluded entirely from the quantity of cocaine attributable to Hoggard. Hoggard therefore cannot show plain error.

We also find no clear error in the District Court's calculation of the quantity of drugs Hoggard purchased from Marte. The court determined that Hoggard purchased on average 100 grams of crack cocaine each week, beginning on or about July 15, 2007, until his arrest in December of that year. Although the District Court acknowledged that the length of Hoggard's relationship with Marte and the frequency and magnitude of his purchases were estimates, its conclusions find adequate support in the record.

A sample of the wiretaps showed that between November 18 and December 4, 2007 — a period of approximately two-and-a-half weeks — Hoggard made at least three trips to the Bronx to purchase drugs from Marte, and on two of these occasions he purchased at least 150 grams of cocaine. To determine the date that Hoggard began purchasing cocaine from Marte, the District Court used as a starting point the dates that Glover and Sherman admitted to having begun purchasing cocaine from Marte, and inferred that Hoggard began dealing with Marte no later than several weeks after Glover and Sherman did. We think this inference was reasonable, because the record showed that Hoggard was in close contact with Glover and Sherman, and often acted in concert with them. Glover testified that between 2003 and 2007, he frequently spoke to Hoggard about various

10

topics related to the sale of cocaine, including where to obtain cocaine, the price of powder cocaine, and how to convert powder cocaine into crack cocaine. Sherman, meanwhile, had offered to help Hoggard sell defective cocaine, and traveled with Hoggard to the Bronx to purchase drugs from Marte. Sherman told law enforcement that he began purchasing wholesale quantities of cocaine from Marte in the spring of 2007, and Glover told authorities that he began using Marte as a source in the middle of 2007. The court's conclusion that Hoggard began purchasing from Marte on about July 15, 2007, was consistent with this evidence.[1]

Finally, we note that although the District Court found that both Marte and Hoggard either dealt in crack cocaine or reasonably could have foreseen that the cocaine they bought and sold would be converted to crack cocaine, the court decided to use the quantity thresholds associated with powder cocaine, not crack cocaine. Had the District Court not employed a one-to-one ratio for crack and powder cocaine, Marte's and Hoggard's Guidelines range would have increased significantly. See U.S.S.G. § 2D1.1(c).

4.    **Leadership Enhancement**

Finally, both Marte and Hoggard challenge the District Court's decision to enhance their Guideline offense levels under U.S.S.G. § 3B1.1(a), which provides a four-level increase if "the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." The application

---

[1] This conclusion finds further support in the testimony of Kenneth Thames, who stated that he began purchasing re-sale quantities of cocaine from Hoggard in September 2007. The District Court also found that telephone calls between Hoggard and Marte in late September reflected "an ongoing, well-established relationship." Hoggard App. 221.

11

notes to this Guideline state that, to be subject to this enhancement, the defendant must have led or supervised "one or more other participants." Id. § 3B1.1 cmt. n.2. The notes define a "participant" as "a person who is criminally responsible for the commission of the offense, but need not have been convicted." Id. § 3B1.1 cmt. n.1. Thus, before it could apply the enhancement, the District Court needed to find that Hoggard and Marte organized or led at least one other participant in a criminal activity involving five or more participants. See United States v. Si Lu Tian, 339 F.3d 143, 156 (2d Cir. 2003).

Marte argues that he did not "lead" any other participant, but we conclude that the record supported the District Court's finding to the contrary. For instance, when Hoggard returned defective cocaine that he had purchased from Marte, Hoggard argued with an unidentified individual associated with Marte over the amount of new cocaine he would receive from Marte. The individual stated that he had spoken with "G," and that "G" gave instructions regarding how to proceed with the exchange. Unsatisfied with the amount he would be receiving, Hoggard immediately called Marte, who advised that the other individual had "fixed" the defective cocaine. Gov't App. 1623. That the individual referred to by Marte was never identified has no bearing on the application of the enhancement.

Hoggard, meanwhile, asserts that the criminal activity in which he participated did not involve five or more participants, and that he was not a "leader" or "organizer." But the evidence showed that at least five others were involved in a drug conspiracy with Hoggard: Kenneth Thames, who purchased crack cocaine from Hoggard and re-sold it; Torrence McCown and Keisha Savain, who ran

12

errands for and otherwise assisted Hoggard; Robert Rawls, another co-defendant frequently recorded discussing drug transactions with Hoggard; and Christopher Sherman, among others. The District Court also noted that two other individuals, Kenneth White and Terrance Jowers, were involved in the conspiracy.

The record also permitted the District Court to conclude that Hoggard led at least one other participant. A wiretapped call showed that on November 21, 2007, Thames called Hoggard to purchase drugs. Hoggard replied that he was in a barbershop, but would make sure Thames received the drugs. Only seconds after ending his call with Thames, Hoggard called McCown, and instructed McCown to bring drugs to the barbershop. On another occasion, Thames ordered drugs from Hoggard. Several minutes later, officers saw Keisha Savain drive to Thames's home, meet with him briefly, and drive away. This evidence was sufficient to permit the District Court to infer that Hoggard instructed McCown and Savain in furtherance of the drug conspiracy.

Finally, we reject Hoggard's argument that he was not given notice that the District Court would rely on information adduced at proceedings involving other defendants. Hoggard's Presentence Report and the government's sentencing memorandum apprised him of all pertinent information from other proceedings, and he had the opportunity to rebut the evidence. Because Hoggard "was on notice of all relevant information that could be used in determining his sentence and had an opportunity to make appropriate objections," United States v. Romano, 825 F.2d 725, 730 (2d Cir. 1987), we find no error.

Accordingly, we affirm the District Court's application of the leadership enhancement to Hoggard.

5. <u>Conclusion</u>

We have considered all of appellants' remaining arguments and conclude that they are without merit. For the foregoing reasons, the judgments of the District Court are AFFIRMED.

> FOR THE COURT:
> Catherine O'Hagan Wolfe
> Clerk of Court